PHILLIPS, Circuit Judge.
This case comes to us for a third time. This time, we review SUWA's challenge to the district court's denial of its second motion to intervene. SUWA filed this second motion after we reversed the district court's determinations on the width of rights-of-way on three roadways. Responding to the issues now raised, we conclude that SUWA has standing to intervene as a party defendant; that we review SUWA's second motion to intervene de novo and not for an abuse of discretion; and that SUWA has met all requirements to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's denial of SUWA's second motion to intervene.
BACKGROUND
In 2008, Kane County sued the United States under the Quiet Title Act, 28 U.S.C. § 2409a, which provides "the exclusive means by which adverse claimants c[an] challenge the United States' title to real property." Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands , 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Kane County alleged that it held title to fifteen rights-of-way under Section 8 of the Mining Act of 1866, more commonly known as "Revised Statute (R.S.) 2477." In enacting R.S. 2477, Congress codified "a standing offer of a free right of way over the public domain," allowing the construction of highways over public lands not already "reserved for public uses." Lindsay Land & Live Stock Co. v. Churnos , 75 Utah 384, 285 P. 646, 648 (1929) (internal quotations omitted). In 1976, Congress enacted the Federal Land Policy and Management Act, which repealed R.S. 2477, but preserved already-existing rights-of-way. 43 U.S.C. § 1769(a).
Seven months after Kane County filed its complaint, SUWA[1] moved to intervene *883 as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Both Kane County and the United States opposed the motion. After a hearing, the district court denied SUWA's motion, concluding that SUWA had no legal interest in the asserted rights-of-way, because "the only issue in this case is whether Kane County can establish that it holds title to the roads at issue" and SUWA "does not claim title to th[ese] roads." Kane Cty., Utah v. United States , No. 2:08-CV-315, 2009 WL 959804, at *2 (D. Utah Apr. 6, 2009). The court further concluded that even if SUWA did have an interest, it had failed to show that the United States would not adequately represent that interest or that it possessed "any special expertise, experience, or knowledge with respect to the historic use of the roads that would not be available to the United States." Id. at *2-3.
In 2009, SUWA appealed, and in March 2010 we affirmed, concluding that "even assuming SUWA has an interest in the quiet title proceedings at issue, SUWA has failed to establish that the United States may not adequately represent SUWA's interest." Kane Cty., Utah v. United States , 597 F.3d 1129, 1133 (10th Cir. 2010) (" Kane County I "). Specifically, we rejected SUWA's argument that it had shown the United States would not adequately represent SUWA's interest in litigating title, despite SUWA's reliance on its history of adversarial relations with the Bureau of Land Management (BLM) and on the BLM's alleged unwillingness to defend federal control. Id. at 1134-35.
We raised the possibility of looking beyond the binary title determination to address the "potential scope of Kane County's purported rights-of-way." Id. at 1135. But we ultimately declined to do so after noting that SUWA had not argued in the district court that scope was part of the title determination. Id. Further, we noted that SUWA hadn't even raised the issue on appeal until questioned about it during oral argument. Id . Accordingly, we deemed the scope argument waived "for purposes of this appeal." Id. We affirmed on grounds that SUWA had "failed to establish, at this stage of the litigation, that the federal government will not adequately protect its interest." Id.
In March 2010, soon after we decided Kane County I , the district court granted the State of Utah's motion to intervene as of right as a plaintiff. Then, in August 2011, after having "traveled all of the roads at issue with counsel and representatives of the parties during a two-day site visit," the district court held a bench trial on the disputed rights-of-way. See Kane Cty., Utah (1) v. United States , No. 2:08-CV-00315, 2013 WL 1180764, at *1 (D. Utah Mar. 20, 2013). At trial, the court heard from twenty-six witnesses and received over one hundred and sixty exhibits. Kane Cty., Utah v. United States , 772 F.3d 1205 (10th Cir. 2014). After post-trial briefing, in which SUWA participated as an amicus curiae,[2] the district court issued memorandum decisions concluding that (1) it had subject-matter jurisdiction under the Quiet Title Act over all the disputed roads, and that (2) Kane County and the *884 State of Utah had proved R.S. 2477 rights-of-way on twelve of the fifteen roads or road segments. Id. The court also decided the scope-i.e., the reasonable and necessary width based on the pre-1976 use-of the proved rights-of-way. Id.
In 2013, the United States and the plaintiffs each filed separate appeals. We summarily denied SUWA's motion to intervene in the cross-appeals. In 2014, we affirmed in part and reversed in part. Kane Cty. , 772 F.3d at 1209-25 (" Kane County II "). Relevant here, we reversed the district court's scope determination for three of the rights-of-way-Swallow Park Road, North Swag Road, and Skutumpah Road-as well as its decision to allow "unspecified future improvements" on these three rights-of-way, id. at 1223-25.[3]
The "scope" of a right-of-way is a question of state law, and under Utah law a right-of-way may be expanded beyond the beaten path where "reasonable and necessary" to safely accommodate the pre-1976 use. Sierra Club v. Hodel , 848 F.2d 1068, 1080, 1083 (10th Cir. 1988), overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh , 956 F.2d 970 (10th Cir. 1992). In other words, an R.S. 2477 right-of-way in Utah may be widened "as necessary to meet the exigencies of increased travel, at least to the extent of a two-lane road." Id. at 1083. This analysis requires the district court to proceed in three steps. First, the court must make the binary determination of whether a right-of-way exists at all. Id. Second, the court must determine the pre-1976 uses of the right-of-way. Id. And third, the court must decide whether, based on the pre-1976 use, the right-of-way should be widened to meet the exigencies of increased travel. Id. To the extent that the right-of-way holder wishes to improve[4] the right-of-way beyond what is reasonable and necessary, however, it must first consult with the BLM. Id. at 1084-85.
In its memorandum decision, the district court had concluded that Kane County and the State of Utah had proved 24-foot rights-of-way on Swallow Park and North Swag roads (five-mile stretches of dirt road with a current travel surface of between *885 10 and 12 feet), and a 66-foot right-of-way on Skutumpah Road (a "major two-lane thoroughfare" stretching thirty three miles with a current travel surface of between 24 and 28 feet). Kane Cty. II , 772 F.3d at 1223 ; Kane Cty. , 2013 WL 1180764, at *9. But because the district court had failed to consider the pre-1976 uses of these roads, we remanded for it to redetermine the width of the roadways. Kane Cty. II , 772 F.3d at 1223. Specifically, we recognized that while a "road can be 'widened [beyond its pre-1976 boundaries] to meet the exigencies of increased travel,' including where necessary to ensure safety," the reasonableness and necessity of any expansion beyond the pre-1976 right-of-way must be read " 'in the light of traditional uses to which the right-of-way was put .' " Id. (emphasis in original) (quoting Hodel, 848 F.2d at 1083 ).[5]
After remand, the case slowed until September 2017, when the district court entered an order directing the parties to file briefs on the effect of our ruling. Ten days later, the parties jointly moved for a four-month stay, stating that they had begun settlement discussions and were "optimistic" that they could "reach agreement regarding the effect of [our] decision" and resolve the remaining issues. Appellant's App. at 38, 110-11. Three days later, the district court granted the motion.[6] About two months after that, SUWA sent a letter to the parties requesting "reasonable advance notice" of any settlement discussions and "an opportunity to attend and participate in such discussions," but received no response. Id. at 125, 262-63. About three months after the joint motion was filed, the President of the United States considerably reduced the size of the Grand-Staircase-Escalante National Monument from about 1,700,000 acres to about 838,000 acres.[7] Relevant here, SUWA represented at oral argument that Swallow Park Road and North Swag Road both lie within the de-established portions of the monument, though the United States asserted that only Swallow Park Road does. About three weeks later, SUWA filed a second motion to intervene,[8] which Kane County, the State of Utah, and the United States all opposed.
Though SUWA styled its 2017 motion as a "Motion to Intervene," the district court treated it as a motion to reconsider its denial of SUWA's 2009 motion to intervene.
*886 In deciding the motion, the district court assumed for purposes of argument that the motion was timely, but still denied it on grounds that SUWA had presented nothing to undermine the court's earlier determination that the United States was adequately representing SUWA's interest. In doing so, the district court relied on three bases.
First, rejecting SUWA's argument to the contrary, the district court ruled that determining title necessarily includes determining the scope of the rights-of-way. The district court reasoned that "scope is inherent in the quiet title process because as a practical matter the court cannot quiet title to an undefined property." Kane Cty., Utah v. United States , No. 2:08-CV-315, 2018 WL 3999575, at *3 (D. Utah Aug. 21, 2018). Second, the court rejected SUWA's argument that the United States was necessarily representing competing interests, reasoning that unlike cases involving environmental regulations or resource management, the United States' sole interest here lay in seeking the narrowest width of the roadways. Id . Third, the court ruled that the "mere possibility of settlement" did not mean that "the United States would advocate for anything other than retention of the maximum amount of property." Id . SUWA timely appealed.
DISCUSSION
SUWA argues that the district court erred by denying its second motion to intervene. Kane County, the State of Utah, and the United States ("the Appellees") have each filed response briefs in support of the district court's order. Before considering the merits of their arguments, we must consider Kane County's argument that SUWA lacks Article III standing.[9]
I. Standing
To seek relief in federal court, a party must show constitutional standing. Bennett v. Spear , 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To make this showing, a party must "demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the [challenged conduct], and that the injury will likely be redressed by a favorable decision." Id. (internal quotations omitted).
In San Juan Cty., Utah v. United States , another R.S. 2477 case involving SUWA, a majority[10] of our en banc court held that "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.' " 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (internal quotations omitted).
But ten years later, the Supreme Court modified our "piggyback standing" rule, holding that an intervenor as of right must "meet the requirements of Article III if the intervenor wishes to pursue relief not requested" by an existing party. Town of Chester, N.Y. v. Laroe Estates, Inc. , --- U.S. ----, 137 S. Ct. 1645, 1648, 198 L.Ed.2d 64 (2017). In that case, the record was ambiguous whether the intervening plaintiff was seeking a different form of relief from the existing plaintiff: a separate award of money damages against the same defendant in its own name. Id. at 1651-52. Because "[a]t least one [litigant] must have standing to seek each form of relief requested," the Court remanded for *887 the circuit court to determine whether the intervenor, in fact, sought "additional relief beyond" what the plaintiff requested. Id. at 1651.[11]
Citing Town of Chester ,[12] Kane County argues that SUWA cannot simply invoke the United States' Article III standing, contending that SUWA and the United States are pursuing different relief. We disagree with that view. After all, the United States has informed us that it seeks "retention of the maximum amount of property" and will argue for "the smallest widths [it] can based on the historical evidence," the same relief that SUWA seeks.[13] See United States' Resp. Br. at 22, 32; Oral Arg., at 18:30.
*888 Moreover, even if SUWA needed to establish its own independent standing, it has done so. Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc. , 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
Here, as in San Juan County , it is "indisputable that SUWA's environmental concern is a legally protectable interest." See 503 F.3d at 1199. To prove an injury in fact, SUWA must establish an actual or imminent impairment of that interest. Imminence is "a somewhat elastic concept," Lujan v. Defs. of Wildlife , 504 U.S. 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur," Susan B. Anthony List v. Driehaus , 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (internal quotations omitted).
Under this standard, we conclude that SUWA has established an imminent injury. Kane County and the State of Utah seek to double the width of Swallow Park and North Swag roads, which are both dirt roads, and to more than double the width of Skutumpah Road. Wider roads will likely require realignments or improvements, such as grading or paving. See generally , Hodel , 848 F.2d at 1084-86 ; Kane Cty., 2013 WL 1180764. Such widening and improvement of the roads in a scenic area would almost inevitably increase traffic, diminishing the enjoyment of the nearby natural wilderness. See Hodel , 848 F.2d at 1092 (noting that a project involving "realignments, widening, ... [and] a significant improvement in the quality of the road surface" would accommodate "large increases in future traffic" on the road); S. Utah Wilderness All. , 425 F.3d at 748 (noting that improvements may "change the character of the roadway").
Nor is such an injury speculative. An injury may be imminent even though contingent upon an unfavorable outcome in litigation. See Protocols, LLC v. Leavitt , 549 F.3d 1294, 1299 (10th Cir. 2008) (concluding that "[t]he consequences of a contingent liability ... may well be actual or imminent" even though "by definition [such liability] may not arise for a considerable time, if ever"). In San Juan County , we recognized that "if the County prevails, it will then pursue opening the road to vehicular traffic that SUWA has been trying to prevent." 503 F.3d at 1200. For that reason, we saw "nothing speculative about the impact on SUWA's interests if the County prevails in its quiet-title action," noting that "the whole point of" Kane County's suit was to increase traffic on the roads.[14] Id. at 1201-02. We acknowledge that San Juan County involved the possibility of reopening closed roads, as *889 opposed to widening already-opened roads, as here-but we view both as sufficient degrees of impact. A 24-foot road allows more traffic than a 10- or 12-foot road (in the case of North Swag and Swallow Park roads), and a 66-foot road allows more traffic than a 24- to 28-foot road (in the case of Skutumpah Road). And the more traffic, the more of an impact on the natural wilderness. Therefore, even assuming SUWA were required to establish its own Article III standing, we conclude that it has done so. See Laidlaw , 528 U.S. at 180-81, 120 S.Ct. 693.
II. Standard of Review
Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties. W. Energy All. v. Zinke , 877 F.3d 1157, 1164 (10th Cir. 2017). We review a district court's timeliness ruling for an abuse of discretion, unless the district court makes no findings on timeliness; in that case, we review de novo. Utah Ass'n of Ctys. v. Clinton , 255 F.3d 1246, 1249 (10th Cir. 2001). And, at least for initial motions to intervene, we review the district court's rulings on the other three prongs de novo. Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior , 100 F.3d 837, 840 (10th Cir. 1996).
SUWA filed its second motion to intervene nine years after filing its first.[15] SUWA argues that the district court erred in treating its second motion as one for reconsideration of its denial of the first motion to intervene. Instead, SUWA says, we should review de novo, because it did "not ask the Court to second guess its prior ruling or review previously existing but newly discovered facts," but rather to consider "a new political and legal landscape that did not exist when SUWA moved to intervene a decade ago." SUWA's Opening Br. at 12 n.47. In contrast, the Appellees argue that this court should treat SUWA's second motion as a mere request to reconsider the denial of its 2008 motion to intervene. From this, they argue that the proper standard of review is for an abuse of discretion. See United States v. Huff , 782 F.3d 1221, 1224 (10th Cir. 2015) ("We review a district court's decision whether to reconsider a prior ruling for abuse of discretion.").
We agree with SUWA. Though our court has never determined what standard of review applies to a successive motion to intervene, we conclude that de novo review is more appropriate when, as here, a proposed intervenor shows that circumstances have changed between the two motions to intervene.
In City of Colorado Springs v. Climax Molybdenum Co. , a movant had filed three motions to intervene over a nearly-fifty-year span. 587 F.3d 1071, 1077 (10th Cir. 2009). Though we ultimately decided the case on standing grounds, we stated that "[i]f we reach the merits of Climax's appeal, our review of the district court's denial of the motion to intervene as of right will be de novo ." Id. at 1078.[16]
*890 In addition, other cases in our circuit point us to de novo review here. In San Juan County , seven judges acknowledged that case developments can alter the intervention calculus. In the lead opinion, Judge Hartz, joined by two other judges, stated that the "denial [of a motion to intervene] does not forever foreclose" intervention and that "the matter may be revisited" if "developments after the original application for intervention undermine" the basis for the initial denial. San Juan Cty. , 503 F.3d at 1207 (opinion of Hartz, J.). In addition, Judge Ebel, joined by three other judges, stated "I recognize, and appreciate the [lead opinion's] recognition that SUWA may renew its motion to intervene at a later date if it can demonstrate more clearly a conflict between its interests and the conduct of the United States in this or subsequent litigation." Id. at 1227 (Ebel, J., concurring in part, and dissenting in part). By emphasizing the possibility of changed circumstances, we view the seven judges as recognizing the importance of another round of review. We see no sense in blocking ourselves from the same de novo review we give the initial motion to intervene-when things have so changed.[17] Significantly, our statement in Kane County I also emphasizes a need to reevaluate intervention when circumstances change.[18] See Kane Cty. I , 597 F.3d at 1135 ("[SUWA] has failed to establish, at this stage of the litigation , that the federal government will not adequately protect its interest.") (emphasis added).
III. SUWA is entitled to intervene as of right.
As previously noted, to intervene as of right SUWA must establish that (1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties. Zinke , 877 F.3d at 1164. "This court has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." Id. (internal quotations omitted). In addition, "the requirements for intervention may be relaxed in cases raising significant public interests." San Juan Cty. , 503 F.3d at 1201 (citing Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co. , 386 U.S. 129, 136, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) ). We now consider each prong in turn.
A. SUWA's motion is timely.
Kane County argues that SUWA's motion is untimely. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including *891 the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.' " Utah Ass'n of Ctys. , 255 F.3d at 1250 (quoting Sanguine, Ltd. v. U.S. Dep't of Interior, 736 F.2d 1416, 1418 (10th Cir. 1984) ). "[D]elay in itself does not make a request for intervention untimely." Oklahoma ex rel. Edmondson v. Tyson Foods, Inc. , 619 F.3d 1223, 1235 (10th Cir. 2010). "The other factors in the test for untimeliness must also be considered." Id.
Reviewing de novo,[19] we conclude that SUWA's motion is timely. First, SUWA filed the motion three months after the parties' joint motion to stay. See Zinke , 877 F.3d at 1164-65 (holding that the motion was timely where the intervenors moved to intervene "just over two months after" learning of the lawsuit that could potentially affect their interests). Second, the only prejudice the Appellees allege is that "having to respond to excess briefs" will "needlessly delay the proceedings." Kane Cty. Resp. Br. at 9. Even assuming this could suffice to show prejudice, our court requires that "the prejudice to other parties ... be prejudice caused by the movant's delay, not by the mere fact of intervention." Tyson Foods , 619 F.3d at 1236. Here, Kane County alleges prejudice just from the fact of intervention. See id. SUWA's participation will be limited to litigating the scope of three roads, and there has been no substantive briefing on this issue since the remand, so we fail to see how allowing SUWA to intervene at this stage would prejudice the Appellees. See San Juan Cty. , 503 F.3d at 1174 ("[T]he intervention of SUWA would not expose the United States to any burden not inherent in the litigation to which it has consented in the Quiet Title Act."). Therefore, because no "unusual circumstances" lead us to believe otherwise, we conclude that SUWA's motion is timely. See Utah Ass'n of Ctys. , 255 F.3d at 1250.
B. SUWA possesses an interest that may be impaired by the litigation.
To meet the interest requirement, an applicant "must have an interest that could be adversely affected by the litigation." San Juan Cty. , 503 F.3d at 1199. We apply "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention."[20] Id. Establishing the potential impairment of such an interest "presents a minimal burden," WildEarth Guardians v. Nat'l Park Serv. , 604 F.3d 1192, 1199 (10th Cir. 2010), and such an impairment may be "contingent upon the outcome of [ ] litigation," San Juan Cty. , 503 F.3d at 1203 (quoting United States v. Union Elec. Co. , 64 F.3d 1152, 1162 (8th Cir. 1995) ). For example, we have concluded that a commercial wildlife photographer who had "photographed and studied the [Mexican Spotted] Owl in the wild" and had been instrumental in the decision to list the Owl under the Endangered Species Act possessed a legal interest in defending against a lawsuit to rescind that protection. Coal. of Ariz./N.M. Ctys. , 100 F.3d at 839-43.
In San Juan County , we concluded that it was "indisputable that SUWA's environmental concern is a legally protectable interest." 503 F.3d at 1199. But in the present case, the district court declined to *892 revisit its 2009 ruling that SUWA possesses no legal interest in the case. In that decision, the district court had reasoned that (1) "unlike the roads at issue in San Juan County , the roads at issue here have been open to the public for many years," and (2) "the only issue in this case is whether Kane County can establish that it holds title to the roads at issue." Kane Cty. , 2009 WL 959804, at *2. These rationales are not persuasive.
First, as mentioned previously, we view the difference in impacts between opening closed roads and widening already-opened roads as one of degree. Wider roads attract more traffic, which would impair SUWA's interest in preservation and enjoyment of the surrounding land. Second, a majority of our court recognized in San Juan County that although "SUWA d[id] not claim that it ha[d] title" to the disputed right-of-way, Rule 24(a)(2) "requires only that the applicant for intervention 'claim an interest relating to the property or transaction which is the subject of the action.' " 503 F.3d at 1200 (alteration omitted) (emphasis in original) (quoting Fed. R. Civ. P. 24(a)(2) ). Given SUWA's decades-long history of advocating for the protection of these federal public lands, and the plaintiffs' stated objective of widening these roads, we conclude that SUWA has an interest that may be impaired by the litigation. See id. at 1201 ; Coal. of Ariz./N.M. Ctys. , 100 F.3d at 838-41 ; Utah Ass'n of Ctys. , 255 F.3d at 1252.
C. The United States may not adequately represent SUWA's interest.
Next, SUWA must show that existing parties may not adequately represent its interest. This burden is "minimal," and "it is enough to show that the representation 'may be' inadequate." Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n , 578 F.2d 1341, 1345 (10th Cir. 1978) (quoting Trbovich v. United Mine Wkers. , 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) ). "Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." Sanguine , 736 F.2d at 1419. "Nor is representation inadequate merely because the representative enters into a [settlement], because any case, even the most vigorously defended, may culminate in a [settlement]." Id . (internal quotations omitted).
When a would-be intervenor's and the representative party's interests are "identical," we presume adequate representation. Bottoms v. Dresser Indus., Inc. , 797 F.2d 869, 872 (10th Cir. 1986) ; see also Pub. Serv. Co. of N.M. v. Barboan , 857 F.3d 1101, 1113-14 (10th Cir. 2017) ("When the applicant and an existing party share an identical legal objective, we presume that the party's representation is adequate."). But where the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, "this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." Utah Ass'n of Ctys. , 255 F.3d at 1255.
Illustrative is WildEarth Guardians v. United States Forest Service , a case in which we allowed a coal company to intervene over an environmental group's opposition. 573 F.3d 992, 994-97 (10th Cir. 2009). The environmental group had argued that the United States and the coal company both advocated for affirming an agency's decision to allow venting of methane gas from a mine. Id. at 994, 996. From this shared objective, the environmental group argued that the government adequately represented the company's interest.
*893 Id. We allowed intervention, noting that "the government has multiple objectives and could well decide to embrace some of the environmental goals" that the company opposed. Id. at 997. Also illustrative is Utah Association of Counties , where we allowed an environmental group to intervene as of right in a suit challenging the legality of the creation of the Grand Staircase-Escalante National Monument. 255 F.3d at 1255-56. There, the Utah Association of Counties opposed intervention, arguing that the government and the environmental group shared identical interests in sustaining the monument. Id . We rejected this argument, explaining that "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." Id. at 1256. The reasoning of these cases supports SUWA's intervention in the present case.
Here, the parties agree that the only remaining issue in the district court is the scope of three roads. In deciding scope, the district court must determine whether it is reasonable and necessary to widen the roads to "meet the exigencies of increased travel ... in the light of traditional uses to which the right-of-way was put." Kane Cty. II , 772 F.3d at 1223 (emphasis omitted) (quoting Hodel , 848 F.2d at 1083 ). SUWA wants the narrowest roads allowed. We must decide whether SUWA has met its minimal burden of establishing that the United States may not adequately represent this interest.
Relying on the above cases, SUWA first argues that its interests are not identical to those of the United States. In that circumstance, we do not apply a presumption of adequate representation. More specifically, SUWA points to the broader interests the United States must consider beyond seeking the narrowest scope of the rights-of-way.
In addition, as it did in the district court, SUWA argues that unlike a title determination, the scope issues in the district court are not a binary choice. Indeed, the title issues-Kane County's and the State of Utah's rights-of-way-are now established, and not contested on appeal. Instead, the intervenors seek to participate in the limited issue on which we remanded-the scope of the three remaining roads. In contrast, the Appellees contend that the United States' interests are identical to SUWA's, arguing that this is merely a "case about title," and that the United States' only interest is to advocate for the narrowest scope of the roads. United States' Resp. Br. at 13-14, 17-19, 21, 31, 38; State of Utah's Resp. Br. at 12-16. We agree with SUWA.
In San Juan County , four judges expressly viewed title and scope as separate determinations, observing that the question of title is a "binary" determination, while scope is much more "nuanced." 503 F.3d at 1228 (Ebel, J., concurring in part, and dissenting in part). We now adopt this reasoning. We read the lead opinion the same way, as it noted that the United States' single objective was to defend "exclusive title."[21] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 1206 (Opinion of Hartz, J.); see also id. at 1228 (Ebel, J., concurring in part, and dissenting in part) (quoting lead opinion that "[s]hould it be determined that the State or the County does hold a valid R.S. 2477 right of way, the closure of Salt Creek Road to vehicular traffic will be revisited to insure that it is *894 consistent with the rights associated with such a right-of-way ") (alterations omitted) (emphasis in original).
We agree with the district court that "scope is inherent in the quiet title process." Kane Cty. , 2018 WL 3999575, at *3. After all, a right-of-way must have a scope. But the district court must determine title and scope in separate steps. The district court itself recognized this in its 2011 summary-judgment order quieting title on many of the roads, while "reserv[ing] for trial the scope of the rights-of-way." See Kane Cty. , 2013 WL 1180764, at *3. Similarly, in Kane County II , we remanded for the district court to re-examine the scope of three rights-of-way, leaving its title determination on those rights-of-way undisturbed. Kane Cty. II , 772 F.3d at 1225. In other words, even upon deciding the R.S. 2477 title issue on the rights-of-way, the district court still needed to decide under Utah law whether Kane County and the State of Utah were entitled to widen the scope of the rights-of-way beyond the beaten path existing before October 21, 1976, when R.S. 2477 was repealed. See Hodel, 848 F.2d at 1083. As more fully explained below, though SUWA and the United States had identical interests in the title determination, they do not on scope.
For a proposed intervenor to establish inadequate representation by a representative party, "the possibility of divergence of interest need not be great," Nat. Res. Def. Council , 578 F.2d at 1346, and this showing "is easily made" when the representative party is the government, Utah Ass'n of Ctys. , 255 F.3d at 1254. SUWA's goal is to limit as much as possible the number of vehicles on the roads, but the United States' objectives "involve a much broader range of interests, including competing policy, economic, political, legal, and environmental factors."[22] See San Juan Cty. , 503 F.3d at 1229 (Ebel, J., concurring in part, and dissenting in part) (citing 16 U.S.C. §§ 1, 1a-1, 271d ). The Appellees contend that this is merely a case about property rights. But when that property is public land, public interests are involved. See Block , 461 U.S. at 284-85, 290, 103 S.Ct. 1811 (noting that the Quiet Title Act "was necessary for protection of national public interests"). And "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation." Utah Ass'n of Ctys. , 255 F.3d at 1255-56. Indeed, "[w]e have repeatedly pointed out that in such a situation the government's prospective task of protecting 'not only the interest of the public but also the private interest of the petitioners in intervention' is 'on its face impossible' and creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation.' "
*895 Utahns for Better Transp. v. U.S. Dep't of Transp. , 295 F.3d 1111, 1117 (10th Cir. 2002) (quoting Nat'l Farm Lines v. I.C.C. , 564 F.2d 381, 384 (10th Cir. 1977) ).
SUWA is focused on pursuing the narrowest scope, but many of the stakeholders involved may want wider roads. The United States represents these broad-ranging and competing interests, too. See San Juan Cty. , 503 F.3d at 1230 (Ebel, J., concurring in part, and dissenting in part) ("[E]ven in this quiet title action, the United States is representing multiple interests."). Indeed, even if the United States is advocating "as well as can be expected" for the narrowest scope of the roads, its conflicting interests render its representation inadequate. See Trbovich , 404 U.S. at 538-39, 92 S.Ct. 630 (finding the Secretary of Labor to be an inadequate representative of a union member who sought to set aside the results of a union-officer election, because the Secretary had a statutory "duty to serve two distinct interests, which are related, but not identical"); see also Zinke , 877 F.3d at 1168 ("[T]he government cannot adequately represent the interests of a private intervenor and the interests of the public.") (emphasis in original); Coal. of Ariz./N.M. Ctys. , 100 F.3d at 845 ("[The government] must represent the public interest, which may differ from [the intervenor's] particular interest."); WildEarth Guardians , 573 F.3d at 997 (noting that the "government ha[d] multiple objectives and could well decide to embrace" some goals that the intervenor opposed).
In addition to the public interest, the United States must consider internal interests, such as the efficient administration of its own litigation resources. When pressed at oral argument about whether it was seeking a reviewable judicial order in this case, the United States responded that it "ha[s] 12,000 of these claims statewide" and is "interested in trying to resolve them as quickly and efficiently as [it] can," see Oral Argument at 24:30, an interest that SUWA certainly doesn't share.[23] Moreover, the United States opposes SUWA's intervention motion-further indicating that it may not adequately represent SUWA's interests here. See San Juan Cty. , 503 F.3d at 1230 (Ebel, J., concurring in part, and dissenting in part) ("[T]he fact that the United States has opposed SUWA's intervention in this action suggests that the United States does not intend fully to represent SUWA's interests."); cf. WildEarth Guardians , 573 F.3d at 997 (finding inadequate representation, in part, because the representative party, while taking no position on intervention, objected to the idea that it be required to "coordinate filings with" the intervenor); Utah Ass'n of Ctys. , 255 F.3d at 1256 ("The government has taken no position on the motion to intervene in this case. Its silence on any intent to defend the intervenors' special interests is deafening.") (internal quotations and alterations omitted).
Given these conflicting interests, we conclude that SUWA's and the United States' interests are not identical. See Utah Ass'n of Ctys. , 255 F.3d at 1255. Therefore, no presumption of adequate representation applies. See id.
Moreover, even if such a presumption were to apply, we would conclude that SUWA has rebutted it. Our court has recognized that a "change in [presidential a]dministration raises 'the possibility of divergence of interest' or a 'shift' during litigation." Zinke , 877 F.3d at 1169 (quoting WildEarth Guardians , 573 F.3d at 996-97 ). Here, the first significant docket activity after the new administration came into office was a motion in September *896 2017 to stay the case to allow settlement discussions to resolve the remaining issues. Though settlement negotiations, standing alone, are not dispositive, see Sanguine , 736 F.2d at 1419, the circumstances here suffice to satisfy the minimal burden to show inadequate representation. We rendered our decision in 2014 and issued the mandate in February 2015, yet, the United States showed no willingness to settle the case until two and half years later, or six months after the new administration inherited the litigation. See E.P.A. v. City of Green Forest, Ark. , 921 F.2d 1394, 1401 (8th Cir. 1990) (reversing the denial of a second motion to intervene because "[a]lthough the [movants] had expressed concerns about possible settlement sixteen months earlier, the settlement possibility [at that time] was merely inchoate"). The United States points to its past litigation conduct in this case, such as its successful appeal in Kane County II , as evidence that it has no intention of "capitulat[ing]." United States' Resp. Br. at 9, 15, 24, 26-27, 32. But the Kane County II appeal was litigated by the previous administration. See Utah Ass'n of Ctys. , 255 F.3d at 1256 (noting that "the government's past conduct" in litigation is not strong evidence of adequacy because "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts") (quoting Kleissler v. U.S. Forest Serv. , 157 F.3d 964, 974 (3d Cir. 1998) ). Moreover, SUWA cites statements from parties involved in the litigation that further support the notion that the new administration may be more inclined to settle.[24]
Significantly, although SUWA will not be entitled to veto any settlement agreement between the United States and the plaintiffs, see Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland , 478 U.S. 501, 529, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), any settlement will require court approval. See Fed. R. Civ. P. 41(a) (after an "opposing party serves either an answer or a motion for summary judgment," the action may be dismissed "only by court order, on terms that the court considers proper"); United States v. Colorado , 937 F.2d 505, 509 (10th Cir. 1991) ("[T]he district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest."). And SUWA will be "entitled to present evidence and have its objections heard at the hearings on whether to approve" such a settlement. See City of Cleveland , 478 U.S. at 529, 106 S.Ct. 3063. As an amicus, SUWA would have no such rights.
In conclusion, given our court's "relaxed" intervention requirements in "cases raising significant public interests" such as this one, see San Juan Cty. , 503 F.3d at 1201, and our "liberal approach to intervention," see Zinke , 877 F.3d at 1164, we hold that SUWA has satisfied its "minimal" burden of showing that the United States may not adequately represent its *897 interests,[25] see Nat. Res. Def. Council , 578 F.2d at 1345.
CONCLUSION
Consistent with this opinion, we reverse the district court's denial of SUWA's motion to intervene.

SUWA is a member-based nonprofit dedicated to preserving the wilderness of the Colorado Plateau. The Wilderness Society and the Sierra Club both joined SUWA's motion to intervene.

The district court allowed SUWA to participate as amicus in a limited capacity. The court denied SUWA's request to address the court during trial, but did accept three of its post-trial briefs (though it limited SUWA to those briefs). And in one of its post-trial memorandum decisions, the district court considered SUWA's jurisdictional arguments. See Kane Cty., Utah v. United States , 934 F. Supp. 2d 1344, 1347, 1360-64 (D. Utah 2013), aff'd in part, rev'd in part and remanded , 772 F.3d 1205 (10th Cir. 2014).

Though not at issue here, we also reversed the district court's finding of subject-matter jurisdiction to resolve title over six of the roads, id. at 1213-14 ; affirmed the district court's determination that the limitations period had not yet run on one of the roads, id. at 1216-19 ; and reversed the district court's determination that one of the roads was "reserved for public use" under R.S. 2477, id. at 1222.

We have distinguished between "routine maintenance, which does not require consultation with the BLM," and "construction of improvements, which does." S. Utah Wilderness All. v. Bureau of Land Mgmt. , 425 F.3d 735, 748-49 (10th Cir. 2005), as amended on denial of reh'g (Jan. 6, 2006). "Construction of improvements" includes "the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (e.g., going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any improvement, betterment, or any other change in the nature of the road that may significantly impact Park lands, resources, or values. Id. (internal quotations omitted). In contrast, "routine maintenance" "preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road, grading it, making sure that the shape of the road permits drainage, and keeping drainage features open and operable-essentially preserving the status quo." Id. (alterations omitted). "Under this definition, grading or blading a road for the first time would constitute 'construction' and would require advance consultation, though grading or blading a road to preserve the character of the road in accordance with prior practice would not." Id.

Kane County and the State of Utah each unsuccessfully petitioned the United States Supreme Court for a writ of certiorari. Kane Cty., Utah v. United States , --- U.S. ----, 136 S. Ct. 318, 193 L.Ed.2d 228 (2015) ; Kane Cty., Utah v. United States , --- U.S. ----, 136 S. Ct. 319, 193 L.Ed.2d 228 (2015).

On January 2, 2018, the parties jointly requested and were granted an additional stay of 31 days. The day the second stay expired, Kane County filed a "Supplemental Brief and Request for Further Findings of Fact and Conclusions of Law," asking the court to conduct an additional site inspection. The United States responded, agreeing that further factfinding was necessary, but asserting that the existing record could be supplemented by lay and expert testimony without a second site visit.

See Presidential Proclamation Modifying the Grand Staircase-Escalante National Monument, 2017 WL 5988612, https://www.whitehouse.gov/presidential-actions/presidential-proclamation-modifying-grand-staircase-escalante-national-monument/. This proclamation, along with a proclamation reducing Bears Ears National Monument from around 1,350,000 acres to about 200,000 acres, were the first diminishments of a national monument in over half a century, and by far the largest in U.S history. See National Park Service, Monuments List , https://www.nps.gov/archeology/sites/antiquities/monumentslist.htm (last visited June 6, 2019).

The Wilderness Society joined the second intervention motion, but the Sierra Club did not.

The Appellees make no prudential-standing arguments.

Unless we indicate otherwise, every citation to San Juan County refers to a portion of Judge Hartz's lead opinion that received seven votes.

The dissent cites Safe Streets Alliance v. Hickenlooper , 859 F.3d 865, 913 (10th Cir. 2017), for the proposition that "any party" seeking to intervene must demonstrate its own independent Article III standing. Dissenting Op. at 898-99. But language to that effect in Safe Streets is dicta. Safe Streets involved two States (Nebraska and Oklahoma) seeking to intervene as plaintiffs in an action against another State, Colorado. There, we held that we were without subject matter jurisdiction to consider the State's intervention motion, because 28 U.S.C. § 1251(a) gave exclusive subject-matter jurisdiction to the United States Supreme Court to resolve disputes between two states. Id. at 877, 912. Furthermore, Safe Streets relied on Hollingsworth v. Perry , 570 U.S. 693, 708, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013), for this dicta about constitutional standing, but Hollingsworth , in fact, applied the piggyback standing rule. There, the intervenors had to demonstrate their own standing because they were the sole parties to seek an appeal. Id. at 702, 708, 133 S.Ct. 2652. Here, the United States remains a party. The dissent also cites United States v. Colorado & Eastern Railroad Company , 882 F.3d 1264 (10th Cir. 2018). But again, that case is inapposite because there the would-be intervenor seeking to enforce a consent decree that it was not a party to "could not 'piggyback' on the standing of one of the described parties to the Consent Decree because there was no current case or controversy pending before the court on the part of those parties." Id. at 1268. In contrast, there exists a live controversy between the United States and the plaintiffs in this case.

Town of Chester involved a plaintiff-side intervenor, but we see no reason not to apply that rule to defendant-side intervenors as well. See Pennsylvania v. President United States of Am. , 888 F.3d 52, 57 n.2 (3d Cir. 2018) (holding that a special-interest group seeking to intervene as a defendant to defend a challenged federal law did not need to demonstrate Article III standing, because the group was seeking "the same relief as the federal government," namely, the upholding of the law). In the action before us, the distinction between a plaintiff-side and defendant-side intervenor is unimportant, considering how easily a similar dispute could have been presented at the federal government's initiative as a plaintiff. See e.g. , Kane Cty. , 934 F. Supp. 2d at 1363 (noting that, before Kane County brought this quiet-title action, the BLM had sued Kane County for trespass regarding the same roads at issue here).

Contrary to the dissent's view, see Dissenting Op. at 898, the interests of the United States and SUWA are not necessarily identical under Rule 24(a)(2) just because they pursue the same form of relief for piggyback standing under Town of Chester . See e.g. , Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior , 100 F.3d 837, 845 (10th Cir. 1996) (concluding that interests were not identical even though both the government and the intervenor sought to uphold the Mexican Spotted Owl's protection); Utah Ass'n of Ctys. v. Clinton , 255 F.3d 1246, 1256 (10th Cir. 2001) (concluding that interests were not identical even though the government and the intervenor both sought to uphold the proclamation creating a national monument). To hold otherwise would leave movants who pursued the same form of relief as the representative party per se adequately represented under Rule 24(a)(2) and thus denied intervention under Town of Chester . See Pennsylvania v. President United States of Am. , 888 F.3d 52, 57 n.2, 60-62 (3d Cir. 2018) (finding inadequate representation where the intervenors pursued the same relief as the party with standing under Town of Chester ); Doe v. Zucker , No. 117CV1005GTSCFH, 2019 WL 111020, at *10, *12 (N.D.N.Y. Jan. 4, 2019) (same) ("Even though Respondents and Intervener-Respondents seek the same ultimate relief [under Town of Chester ], their interests remain different enough that Respondents might not adequately represent their unique interests.").

Though this portion of the opinion concerned the potential impairment of SUWA's interests under Rule 24(a)(2), other courts have recognized that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." Roeder v. Islamic Republic of Iran , 333 F.3d 228, 233 (D.C. Cir. 2003) ; see also Sokaogon Chippewa Cmty. v. Babbitt , 214 F.3d 941, 946 (7th Cir. 2000) ("Any interest of such magnitude as to support Rule 24(a) intervention of right is sufficient to satisfy the Article III standing requirement as well.") (internal quotations and alterations omitted).

Kane County represents that this is SUWA's "fifth attempt" to intervene in this case. See Kane Cty.'s Resp. Br. at 1. To reach this figure, Kane County includes SUWA's appeal of the 2008 denial, SUWA's attempt to intervene in the Kane County II appeal, and SUWA's current appeal. We reject such a broad characterization.

We note that the dissent's cited cases on this point, Abeyta v. City of Albuquerque , 664 F.3d 792, 796 (10th Cir. 2011), and Plain v. Murphy Family Farms , 296 F.3d 975, 978 (10th Cir. 2002), contain stray comments characterizing a successive motion for intervention as a motion to reconsider. See Dissenting Op. at 901-02. But neither case involved an appeal of the denial of an intervention motion. Rather, both cases conclude that a nonparty cannot appeal an adverse judgment unless "the nonparty has a unique interest in the litigation and becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal." Abeyta , 664 F.3d at 796 (citing Plain , 296 F.3d at 978 ).

We discuss these developments later in Part III.C addressing adequate representation. In short, we consider a district court's moving from the binary title question to the more nuanced scope question as a qualifying development, as well as the change in presidential administration and its recent efforts to settle. See Zinke , 877 F.3d at 1169 ("[T]he change in the Administration raises the possibility of divergence of interest or a shift during litigation.") (internal quotations omitted).

Indeed, during oral argument in Kane County I , the panel explored whether SUWA's interests might not arise until after title had been decided in favor of Kane County or the State of Utah.

We review the timeliness prong de novo because the district court made no timeliness findings. See Utah Ass'n of Ctys. , 255 F.3d at 1249.

Though our court used to require an interest to be "direct, substantial, and legally protectable," we abandoned that test in San Juan County , finding it "problematic." 503 F.3d at 1192.

Neither Judge Kelly's nor Judge McConnell's concurrence takes a position on the question of scope.

The Appellees argue that SUWA waived this argument, citing to our decision in Kane County I . But we merely deemed the argument waived "for purposes of th[at] appeal." Kane Cty. I , 597 F.3d at 1135. This is a new appeal. Scope was not yet at issue in Kane County I , because title was yet to be decided. Moreover, unlike nine years ago, when SUWA first raised scope "upon questioning at oral argument," see id. , the Appellees have now been afforded a full opportunity to brief the issue in this appeal. See Planned Parenthood of Kan. & Mid-Mo. v. Moser , 747 F.3d 814, 838 (10th Cir. 2014) (exercising our discretion to consider a waived issue because the parties had an opportunity to brief the issue and because it was "sufficiently substantial and important to demand our attention"). We thus see no unfairness to the Appellees in considering this "substantial and important" issue. See id .

An order approving a settlement agreement would be reviewable only for an abuse of discretion. United States v. Hardage , 982 F.2d 1491, 1495 (10th Cir. 1993).

SUWA cites a State of Utah attorney's testimony before a legislative committee in 2014, stating that "the federal government has taken the position that the only way we get an R.S. 2477 road is if a court orders it." See Utah State Legislature, Meeting of the Natural Resources, Agricultural, and Environmental Quality Appropriations Subcommittee, Public Lands Office: RS 2477 Efforts and Results (Sept. 18, 2014), available at http://utahlegislature.granicus.com/MediaPlayer.php?view_id=2&clip_id=17764. Consistent with this testimony, SUWA also cites a memo from a regional BLM director to the Acting BLM Solicitor, which states that although settlement negotiations with the previous administration had "broke[n] down," the parties agreed in April 2017 "to begin a dialogue to explore potential resolutions to the R.S. 2477 issue[s in Utah] under th[e new] administration." Appellant's App. vol. 1 at 133-34, 292-93.

SUWA also argues that the administration's decision to reduce by half the Grand Staircase-Escalante National Monument presents a basis to disbelieve that the United States will, in fact, fight for the narrowest scope of the roads. As SUWA sees it, if the administration is willing to rescind protections of a vast expanse of land in the same area as the roads at issue, one could reasonably infer that it may not vigorously fight for the smallest scope of the roads. Because we find that SUWA has met its burden without this evidence, we need not address this argument.