FILED
United States Court of Appeals
Tenth Circuit

March 4, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KANE COUNTY, UTAH,

    Plaintiff - Appellee,

STATE OF UTAH,

    Intervenor Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee,

and

SOUTHERN UTAH WILDERNESS
ALLIANCE; SIERRA CLUB; THE
WILDERNESS SOCIETY; GRAND
CANYON TRUST,

    Movants - Appellants.

No. 22-4087

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:10-CV-01073-CW)**
_____

Kathleen R. Hartnett, Cooley LLP, San Francisco, California (Stephen H.M. Bloch and Michelle White, Southern Utah Wilderness Alliance, Salt Lake City Utah; John C. Dwyer and Tijana Brien, Cooley LLP, Palo Alto, California; Lauren Pomeroy, Cooley LLP, San Francisco, California; and Trevor J. Lee and Mitch M. Longson, Manning Curtis Bradshaw & Bednar PLLC, Salt Lake City, Utah, with her on the briefs), for Movants-Appellants.

John E. Bies, United States Department of Justice, Environmental & Natural Resources Division (Todd Kim, Assistant Attorney General, with him on the brief), Washington, D.C., for Defendant-Appellee United States of America.

Shawn T. Welch, Holland & Hart LLP (Michelle Quist, Holland & Hart LLP, with him on the brief) Salt Lake City, Utah, for Plaintiff-Appellee Kane County, Utah.

Sean D. Reyes, Utah Attorney General, Anthony L. Rampton, Kathy A.F. Davis, and K. Tess Davis, Assistant Attorneys General, Salt Lake City, Utah, on the brief for the Intervenor Plaintiff-Appellee The State of Utah.

_____

Before **PHILLIPS**, **KELLY**, and **ROSSMAN**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

We are called on again to review an order denying a motion to intervene as of right in the Kane County litigation. Most recently, in a 2019 appeal involving the same parties raising the same issues and interests—but different alleged rights-of-way—we concluded that Southern Utah Wilderness Alliance (SUWA) (1) had Article III standing and (2) was entitled to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. *Kane Cnty. v. United States* (*Kane III*), 928 F.3d 877, 882 (2019), *cert. denied*, 141 S. Ct. 1283, 1284 (2021). Because there is no material distinction between this case and *Kane III*, we reverse the district court's denial of SUWA's motion to intervene on the issue of scope and remand for further proceedings consistent with this opinion.

2

## BACKGROUND

This appeal comes to us amid years of litigation between Kane County, Utah and the United States under the Quiet Title Act, 28 U.S.C. § 2409a. The Act provides "the exclusive means by which adverse claimants c[an] challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). During the past fifteen-plus years, Kane County has filed multiple lawsuits seeking to quiet title to hundreds of alleged rights-of-way crossing federal land in Kane County, Utah. The suits rely on Section 8 of the Mining Act of 1866, more commonly known as Revised Statute (R.S.) 2477.

In enacting R.S. 2477 in 1866, Congress codified "a standing offer of a free right of way" over public lands not already "reserved for public uses." *Lindsay Land & Live Stock Co. v. Churnos*, 285 P. 646, 648 (Utah 1929) (cleaned up).[1] But on October 21, 1976, "Congress enacted the Federal Land Policy and Management Act, which repealed R.S. 2477, but preserved already-existing rights-of-way." *Kane III*, 928 F.3d at 882 (citing 43 U.S.C. § 1769(a)). Congress' repeal of R.S. 2477 "had the effect of 'freezing'" rights-of-way in existence before October 21, 1976. *Kane Cnty. v. United States* (*Kane II*), 772

---

[1] As we have previously noted, "[a] right of way is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." *S. Utah Wilderness All. v. Bureau of Land Mgmt.* (*SUWA v. BLM*), 425 F.3d 735, 747 (10th Cir. 2005).

F.3d 1205, 1224 (10th Cir. 2014) (quoting *S. Utah Wilderness All. v. Bureau of Land Mgmt.* (*SUWA v. BLM*), 425 F.3d 735, 741 (10th Cir. 2005)), *cert. denied*, 577 U.S. 922 (2015).

In 2008, Kane County filed its first quiet-title action (*Kane (1)*) seeking to quiet title to fifteen alleged R.S. 2477 rights-of-way. Then, in 2010, while *Kane (1)* was proceeding, Kane County, later joined by the State of Utah as an intervenor (collectively, "Kane County"), filed this action (*Kane (2)*) seeking to quiet title to sixty-four more rights-of-way.[2] In 2011, and again in 2012, Kane County and the State of Utah filed two more actions (styled as *Kane (3)* and *Kane (4)*), claiming title to 711 more rights-of-way. The district court consolidated *Kane (3)* and *Kane (4)* with *Kane (2)*. *See generally Kane Cnty. (2), (3), & (4) v. United States* (*Kane (2)*), 606 F. Supp. 3d 1138 (D. Utah 2022). Like the parties, we refer to these consolidated cases as *Kane (2)*. Though *Kane (2)* involves claims to different alleged R.S. 2477 rights-of-way than those in *Kane (1)*, the legal issues, parties, state, county, and the presiding district court judge are the same.

---

[2] In December 2011, the district court granted the State of Utah's motion to intervene as plaintiff in support of Kane County's claims based, in part, on the United States' concession that the State of Utah met Rule 24(a)(2)'s requirements.

In *Kane (1)*, SUWA[3] moved to intervene as of right as a defendant in support of the United States under Rule 24(a)(2) of the Federal Rules of Civil Procedure.[4] On March 6, 2020, we issued the mandate in *Kane III* directing the district court to grant SUWA's motion to intervene as of right in the remand proceedings in *Kane (1)*, where the one remaining issue was the scope of three of Kane County's R.S. 2477 rights-of-way. *See Kane III*, 928 F.3d at 882, 884–85.

In *Kane (2)*, relying on our ruling in *Kane III*, SUWA moved to intervene as of right. Two years later, the district court denied this intervention motion, remarking that *Kane III* did not grant SUWA a "*per se* right to intervene in R.S. 2477 cases" and that the intervention motion before it in *Kane (2)* was "distinguishable" from the intervention motion in *Kane (1)*. *Kane (2)*, 606 F. Supp. 3d at 1142.

SUWA now appeals, asking us to determine whether, based on *Kane III*—which allowed SUWA to intervene in *Kane (1)*—the district court erred in denying its motion to intervene in *Kane (2)*.

---

[3] SUWA is a member-based nonprofit dedicated to preserving the wilderness of the Colorado Plateau. In *Kane (2)*, The Wilderness Society, Sierra Club, and Grand Canyon Trust have joined SUWA's motions to intervene. We refer to these parties collectively as "SUWA."

[4] "[W]hen a party intervenes [under Rule 24(a)(2)], it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993) (citation omitted).

We begin by retracing the history of *Kane (1)* to put the present appeal in context.[5]

## I.    SUWA's Intervention as of Right in *Kane (1)*

In 2008, seven months after Kane County filed its complaint in *Kane (1)*, SUWA moved to intervene as of right as a defendant in the action under Rule 24(a)(2). Rule 24(a)(2) requires that "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane III*, 928 F.3d at 889 (citing Fed. R. Civ. P. 24(a)(2)).

The district court denied SUWA's motion. Addressing Rule 24(a)(2)'s interest prong, the court concluded that SUWA lacked a legal interest relating to the asserted rights-of-way. *Kane Cnty. (1) v. United States*, No. 08-cv-00315, 2009 WL 959804, at *2 (D. Utah Apr. 6, 2009). This conclusion rested on the court's view that "the only issue in this case is whether Kane County can establish that it holds title to the roads at issue" and SUWA "does not claim title to the roads." *Id.* Next, addressing the adequate-representation prong, the

---

[5] From the 2008 lawsuit now styled as *Kane (1)*, this court has issued three published opinions: in 2010, 2014, and 2019. All three opinions are part of *Kane (1)*, as each appeal addressed an issue arising from that lawsuit. The instant appeal arises from Kane County's later litigation: *Kane (2)*. Though *Kane (2)* is a separate case, our decision in *Kane (1)* governs the analysis in this appeal too, because both lawsuits involve R.S. 2477 claims by Kane County to quiet title against the United States in Kane County, Utah.

court concluded that even if SUWA did have a legal interest relating to the asserted rights-of-way, it had failed to show that the United States would not "vigorously defend" its own claim "to legitimate title to the roads." *Id.* at \*3. SUWA appealed.

### A.    *Kane I*

We affirmed the district court's denial of SUWA's motion to intervene as of right on the R.S. 2477 title issue. *Kane Cnty. v. United States* (*Kane I*), 597 F.3d 1129, 1133 (10th Cir. 2010). We agreed with the district court's determination that "even assuming SUWA has an interest in the quiet title proceedings at issue, SUWA . . . failed to establish that the United States may not adequately represent SUWA's interest." *Id.* But during oral argument, the court questioned SUWA's counsel about whether the adequacy-of-representation result might be different on the issue of scope. *Id.* at 1135. Ultimately, we treated that issue as waived "for purposes of th[e] appeal." *Id.* In affirming, we noted that SUWA had "failed to establish, *at this stage of the litigation*, that the federal government will not adequately protect its interest." *Id.* (emphasis added).

Soon after we decided *Kane I*, the district court granted the State of Utah's motion to intervene as of right as a plaintiff under Rule 24(a)(2). The next year, the district court held a bench trial on the disputed rights-of-way. After post-trial briefing—in which SUWA participated in a limited capacity as amicus curiae—the district court quieted title to Kane County and the State of

7

Utah on twelve of the fifteen alleged rights-of-way. The court also decided the scope of those twelve rights-of-way. The United States and Kane County (joined by the State of Utah) filed separate appeals, bringing the case before us again.

### B.    *Kane II*

As pertinent here, we reversed the district court's scope determination for three of the rights-of-way. *Kane II*, 772 F.3d at 1223–25. We did so (1) because the district court had determined the scope of the three rights-of-way without considering their respective uses before 1976, and (2) because the court's decision allowed "room for unspecified future improvements." *Id.* We remanded for the district court to redetermine the scope of those three rights-of-way "in light of the pre-1976 uses." *Id.* at 1223.

On remand, SUWA again moved to intervene to participate in proceedings on the sole outstanding issue: the scope of three of Kane County's rights-of-way. The district court again denied SUWA's motion. SUWA timely appealed.

### C.    *Kane III*

We reversed the district court's intervention ruling. *Kane III*, 928 F.3d at 882. Reviewing de novo, we concluded that SUWA had standing to intervene as a party defendant. *Id.* at 889–90. Next, we determined that SUWA had met all requirements to intervene as of right under Rule 24(a)(2): (1) that SUWA's application was timely; (2) that SUWA had an interest relating to the property

8

or transaction which is the subject of the action; (3) that SUWA's interest may as a practical matter be impaired or impeded by the litigation; and (4) that SUWA's interest may not be adequately represented by the United States. *See id.* at 890–96.

In analyzing the adequate-representation prong—the focus of the appeal now before us—we concluded that "SUWA's and the United States' interests are not identical" on the issue of scope, and therefore that "no presumption of adequate representation applies." *Id.* at 895; *see id.* at 892 ("When a would-be intervenor's and the representative party's interests are 'identical,' we presume adequate representation.") (quoting *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)).

We described SUWA's interest in the scope determination as being "to limit as much as possible the number of vehicles on the roads." *Id.* at 894. We contrasted that with the United States' representing "multiple interests," including "competing policy, economic, political, legal, and environmental factors." *Id.* (quoting *San Juan Cnty. v. United States*, 503 F.3d 1163, 1229 (10th Cir. 2007) (Ebel, J., concurring in part, and dissenting in part)).[6] We

---

[6] In *San Juan County*, seven of thirteen members of the en banc court addressed the issue of adequate representation. Of those seven, three joined Judge Ebel's opinion. In *Kane III*, this court adopted the reasoning in Judge Ebel's opinion. *See* 928 F.3d at 893 ("In *San Juan County*, four judges expressly viewed title and scope as separate determinations, observing that the question of title is a 'binary' determination, while scope is much more 'nuanced.' We now adopt this reasoning." (citation omitted)).

summarized it this way: though "SUWA is focused on pursuing the narrowest scope, . . . many of the stakeholders involved may want wider roads," and the United States represents these "competing interests." *Id.* at 895. So even if the United States was advocating "as well as can be expected" for the narrowest scope of the rights-of-way, we concluded that its representation of such "broad-ranging and competing interests" rendered its representation of SUWA's interests inadequate. *Id.*; *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1112 (10th Cir. 2002) ("We have repeatedly pointed out that . . . the government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation." (cleaned up)).

"In addition to the public interest," we observed that "the United States must consider internal interests, such as the efficient administration of its own litigation resources" in resolving the "12,000 R.S. 2477 claims" it is defending in Utah "'as quickly and efficiently as it can,' *an interest that SUWA certainly doesn't share*." *Id.* at 895 (emphasis added) (cleaned up) (quoting counsel for the United States at Oral Argument at 24:30).[7] We reinforced this rationale by

---

[7] "When pressed at oral argument" in *Kane III* "about whether [the United States] was seeking a reviewable judicial order in th[at] case, the United States responded that it 'has 12,000 of these claims statewide' and is

(*footnote continued*)

10

pointing to the United States' opposition to SUWA's intervention motion. *Id.* (citing *San Juan Cnty.*, 503 F.3d at 1230 (Ebel, J., concurring in part, and dissenting in part) ("[T]he fact that the United States has opposed SUWA's intervention in this action suggests that the United States does not intend fully to represent SUWA's interests."); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009) (finding inadequate representation, in part, because the representative party, while taking no position on intervention, objected to the idea that it be required to "coordinate filings with" the intervenor); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) ("The government has taken no position on the motion to intervene in this case. Its silence on any intent to defend the intervenors' special interests is deafening." (cleaned up)).[8]

---

'interested in trying to resolve them as quickly and efficiently as it can.'" 928 F.3d at 895 (cleaned up). This interest, we observed, was "an interest that SUWA certainly doesn't share." *Id.*

[8] Alternatively, we decided that "even if" SUWA and the United States had identical interests in the scope determination—meaning a presumption of adequate representation would apply—SUWA would have rebutted the presumption. *Kane III*, 928 F.3d at 895–96. The United States' sudden inclination to engage in settlement negotiations in *Kane (1)* after the inauguration of a new presidential administration—though the case had proceeded on remand for two-and-a-half years—signified to us that SUWA's interests and the United States' interests had possibly diverged. *Id.* Because Presidential administrations have changed in the years since then, SUWA's argument on this point is gone, and it has no place in the present appeal.

"[G]iven our court's relaxed intervention requirements in cases raising significant public interests such as this one, and our liberal approach to intervention," we held that "SUWA ha[d] satisfied its minimal burden of showing that the United States may not adequately represent its interests." *Id.* at 896–97 (cleaned up). Accordingly, we reversed the district court's denial of SUWA's motion to intervene. *Id.* at 897. As a result of our ruling, SUWA is now participating as a party in the district court remand proceedings in *Kane (1)*.[9]

## II.    SUWA's Intervention Attempts in *Kane (2)*

In *Kane (2)*, SUWA has four times sought to intervene as of right as a defendant in support of the United States.[10] Though for context we briefly review each of SUWA's motions below, the present appeal concerns just the denial of SUWA's fourth motion to intervene.

*The first denial*. On September 10, 2014, the district court denied SUWA's first motion to intervene as of right in *Kane (2)*, but granted SUWA permissive intervention subject to certain limitations on its participation in

---

[9] At oral argument in this appeal, SUWA confirmed that it is now participating in remand proceedings in *Kane (1)* as an intervenor of right—calling experts and witnesses and submitting briefing. *See* Oral Argument at 2:00–2:35.

[10] Kane County represents that this is SUWA's "fifth attempt" to intervene in this case. *See* K.C. Br. at 7. To reach this figure, Kane County counts SUWA's near identical motions that it filed on two different dockets a few days after those dockets had been consolidated.

discovery, claims and defenses, motions, settlement negotiations, and trial.[11] One such limitation was that SUWA could not file any motion without the district court's permission. Thus, SUWA filed each motion discussed below after first obtaining the court's permission.

*The second denial.* On May 25, 2018, SUWA filed its second motion to intervene as of right. SUWA argued that "[g]ood cause now exists to revisit the [2014] Intervention Order." App. vol. II, at 535. In support, SUWA relied on "the change in the Presidential Administration." *Id.* SUWA asserted that this change had "resulted in a fundamental transformation in land policy that has placed the United States at best beholden to a diversity of new interests, if not entirely at odds with SUWA." *Id.* Denying SUWA's second motion, the district court ruled that "no change to SUWA's intervention status is warranted," because "SUWA's arguments that the United States no longer represents its interests are unavailing." App. vol. IV, at 1150.

*The third denial.* On July 10, 2019, after we issued the order in *Kane III*, SUWA filed its third motion to intervene. This time, SUWA argued that "in a related case, the Tenth Circuit recently held that the Court's conclusions about SUWA's interests were incorrect and SUWA is legally entitled to intervention as of right." App. vol. VI, at 1553. Ultimately, the district court denied

---

[11] Whether to grant permissive intervention under Rule 24(b) "lies within the discretion of the district court," and allows parties to participate in the litigation, subject to limitations imposed by the district court. *Kane I*, 597 F.3d at 1135.

SUWA's motion, reasoning, in part, that it was not bound by the *Kane III* decision because the mandate in that case had not yet issued due to pending en banc petitions. *Kane Cnty. (2), (3), & (4) v. United States*, 333 F.R.D. 225, 243–44 (D. Utah 2019).

SUWA then sought a writ of mandamus from this court, asking us to review the district court's denial of its third intervention motion and to reassign the ongoing R.S. 2477 cases to a different district court judge. In deciding SUWA's request, we noted that the district court had stated that "[w]hen the mandate on [*Kane III*] ultimately issues, the court will respect the ruling." App. vol. VII, at 1885. And so in our view, the only error that SUWA had shown was that the district court "at most" had "erred as a matter of law in holding that the district court is not bound, pre-mandate, to apply *Kane* [*III*] in the other pending R.S. 2477 cases." *Id.* at 1889. Because "such an error would not constitute 'the egregious error necessary for the court to issue a writ of mandamus,'" we denied SUWA's requested relief. *Id.* (citations omitted).

In February 2020, in *Kane (2)*, the district court held a three-week bellwether bench trial on fifteen of the 775 claimed rights-of-way.

*The fourth denial.* This brings us to SUWA's present appeal of the denial of its fourth motion to intervene. Four days after we issued the mandate in *Kane III*, SUWA sought the district court's permission to file a motion to intervene as of right. The district court ordered expedited briefing on SUWA's request, and on March 16, 2020, the court entered an order allowing SUWA to

14

file its intervention motion. On April 6, 2020, SUWA filed its motion asserting that it was entitled to intervene as of right on the issues of title *and* scope because (1) the district court must apply *Kane III*, (2) SUWA has an interest that may be impaired by the litigation, and (3) the United States does not adequately represent SUWA's interests. Both Kane County and the United States opposed SUWA's motion.

More than two years later, the district court issued an order, once again denying SUWA's motion to intervene as of right on the issues of title and scope. *Kane (2)*, 606 F. Supp. 3d at 1142. The district court began by acknowledging that, under *Kane III*, SUWA had both piggyback and Article III standing. *Id.* at 1142–45; *see Kane III*, 928 F.3d at 886–89. And though Kane County then (for the first time) asserted that "SUWA lack[ed] prudential standing," the court declared that it is "unclear . . . what the interplay is between piggyback standing and prudential standing," and it declined to resolve the prudential-standing issue.[12] *Kane (2)*, 606 F. Supp. 3d at 1145; *see also Kane III*, 928 F.3d at 886 n.9 (noting that neither Kane County nor the United States challenged SUWA's prudential standing). Turning to the intervention requirements under Rule 24(a)(2), the court relied on *Kane III* and *San Juan County* in ruling that SUWA had shown a Rule 24(a)(2) interest in the case.

---

[12] On appeal, Kane County challenges SUWA's prudential standing, but it does not contend that prudential standing is required to intervene under Rule 24(a)(2). *See* K.C. Br. at 39–41. So we do not consider that issue further.

15

606 F. Supp. 3d at 1152.[13] But because the court determined that SUWA's interests were "*adequately* represented by the United States," it denied SUWA's motion on the adequate-representation prong. *Id.* at 1153–54.

At SUWA's request, the district court certified an interlocutory appeal under 28 U.S.C. § 1292(b) to enable SUWA to challenge its denial of intervention as of right in the *Kane (2)* proceedings. On September 13, 2022, this court exercised its discretion to hear SUWA's appeal. On February 3, 2023, the same day that the United States and Kane County filed their merits briefs, they each petitioned for initial hearing en banc, which SUWA opposed. On April 17, 2023, we denied the en banc request and assigned the appeal for oral argument. Now, exercising jurisdiction under § 1292(b), we affirm in part and reverse in part.

## STANDARD OF REVIEW

We review de novo the denial of a "successive motion to intervene" when "a proposed intervenor shows that the circumstances have changed between the two motions to intervene." *Kane III*, 928 F.3d at 889. In its mandate in *Kane III*, this court announced controlling legal principles on intervention, which

---

[13] The district court did not mention the timeliness requirement of Rule 24(a)(2). We note that neither Kane County nor the United States asserts that SUWA's fourth motion to intervene was untimely. "The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case . . . ." *Kane III*, 928 F.3d at 890–91. Because SUWA promptly requested permission from the district court after we issued our mandate in *Kane III*, we conclude that SUWA's fourth motion was timely under Rule 24(a)(2).

SUWA relied on in its fourth intervention motion. *See id.* at 884 (deciding that "though SUWA and the United States had identical interests in the title determination, they do not on scope"). Given this change in circumstances, "[w]e see no sense in blocking ourselves from the same de novo review we give the initial motion to intervene." *Id.* at 890.

## LEGAL FRAMEWORK

Before proceeding to the merits of the intervention issue, we briefly describe the legal framework governing R.S. 2477 claims under the Quiet Title Act. Such disputes involve two issues: title and scope, which the district court is to address "in separate steps." *Kane III*, 928 F.3d at 894.

First, the court makes the "binary determination of whether a right-of-way exists at all." *Id.* at 884; *accord Kane I*, 597 F.3d at 1134 (quoting *San Juan Cnty.*, 503 F.3d at 1228 (Ebel, J., concurring in part, and dissenting in part)). Second, the court determines "the pre-1976 uses of the right-of-way." *Kane III*, 928 F.3d at 884. And third, the court decides "whether, based on the pre-1976 use, the right-of-way should be widened to meet the exigencies of increased travel." *Id.* Thus, step one concerns title, and steps two and three, scope. Both title and scope are questions of state law. *See SUWA v. BLM*, 425 F.3d at 768 (applying state law to decide title); *Kane III*, 928 F.3d at 884 (applying state law to decide scope).

At step one, in deciding whether a right-of-way exists, the court evaluates whether the grant of the alleged R.S. 2477 right-of-way was accepted

17

through continuous public use before October 21, 1976. *SUWA v. BLM*, 425 F.3d at 771 ("Acceptance of an R.S. 2477 right of way in Utah . . . requires continuous public use for a period of ten years."). If Kane County proves such pre-1976 acceptance, the court must quiet title to the identified travel surface—i.e., the beaten path—in favor of Kane County. But otherwise, Kane County's quiet title claim must fail.

If Kane County succeeds in proving that the R.S. 2477 right-of-way exists, the litigation proceeds to the more "nuanced" scope inquiry.[14] *Kane III*, 928 F.3d at 893 (quoting *San Juan Cnty.*, 503 F.3d at 1229 (Ebel, J., concurring in part, and dissenting in part)). Here, "scope" refers to the "width based on the pre-1976 use." *Id.* But the "width" of a right-of-way "is not limited to the actual beaten path as of October 21, 1976." *Kane II*, 772 F.3d at 1223. In Utah, the width of a right-of-way is that which is "reasonable and necessary under all the facts and circumstances." *Id.* (quoting *Memmott v. Anderson*, 642 P.2d 750, 754 (Utah 1982)). And so an R.S. 2477 right-of-way "can be widened to meet the exigencies of increased travel, including where necessary to ensure safety." *Id.* (cleaned up). But still, the reasonableness and necessity of any expansion

---

[14] *See, e.g.*, *Kane Cnty. v. United States*, No. 08-cv-00315, 2011 WL 2489819, at *7–9 (D. Utah June 21, 2011) (granting in part Kane County's motion for summary judgment—quieting title to select roads in favor of Kane County but reserving "issues pertaining to scope" for trial); *Kane II*, 772 F.3d at 1223 (accepting the district court's determination that Kane County had proven title to three rights-of-way with a "travel surface" of 10 feet, 10–12 feet, and 24–48 feet, respectively, but reversing for further proceedings to determine the scope of those rights-of-way).

beyond the "actual beaten path" before October 21, 1976, must be read "*in the light of traditional uses to which the right-of-way was put*." *Id.* (quoting *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988), *overruled on other grounds*, *Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992)).

Thus, to determine the scope of an R.S. 2477 right-of-way, the court undertakes steps two and three.

At step two, the court "determine[s] the pre-1976 uses of the right-of-way" based on historical evidence. *Kane III*, 928 F.3d at 884.[15] And at step three, based on the pre-1976 use, the court must decide, under Utah law, whether "Kane County . . . [is] entitled to widen the scope of the rights-of-way beyond the beaten path existing before October 21, 1976." *Id.* at 894.[16]

---

[15] "Uses" is plural because there may be multiple pre-1976 uses relevant to determining the scope of the right-of-way. For example, in *Hodel*, we observed that the district court had found several pre-1976 uses including, "driving livestock; oil, water, and mineral development"; and tourism. 848 F.2d at 1084.

[16] "To the extent that" Kane County "wishes to improve the right-of-way beyond what is reasonable and necessary, however, it must first consult with" the Bureau of Land Management. *Kane III*, 928 F.3d at 884 & n.4 (citation omitted) (distinguishing "routine maintenance, which does not require consultation with the BLM," from "construction of improvements, which does"). "Construction of improvements" includes, for example, "the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (e.g., going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any improvement, betterment, or

(*footnote continued*)

19

With this three-step framework in mind, we proceed to the question of whether the United States adequately represents SUWA's interests in this case.

## DISCUSSION

Before this court, SUWA challenges the district court's denial of its fourth motion to intervene not only on scope but on title. Kane County and the United States have each filed separate response briefs. Though Kane County seeks affirmance of the district court's denial of intervention it does not explain how *Kane III* is distinguishable from this case.[17] In contrast, the United States concedes that "there are no material differences" between this case and *Kane III*, and thus that this panel is "bound by [that] controlling precedent." U.S. Br.

---

any other change in the nature of the road that may significantly impact Park lands, resources, or values." *Id.* (quoting *SUWA v. BLM*, 425 F.3d at 748–49). "[R]outine maintenance," in contrast, "preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road, grading it, making sure that the shape of the road permits drainage, and keeping drainage features open and operable—essentially preserving the status quo." *Id.* (quoting same).

[17]At most, Kane County asserts that "[e]ach case has different facts, different roads, and different circumstances," K.C. Br. at 43, but does not identify how such differences remove this case from the ambit of *Kane III*.

We acknowledge that Kane County's brief goes on to assert that, notwithstanding *Kane III*, SUWA does not have standing and cannot satisfy the interest prongs of Rule 24(a)(2). But because a panel lacks authority to override *Kane III*, Kane County must obtain en banc review before pursuing those arguments. *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023) (emphasizing that one panel cannot override the decision of another panel). We therefore presume that because Kane County filed a motion for an initial en banc review the same day it filed its merits brief, Kane County has asserted these arguments to preserve them for consideration by an en banc court.

at 16. The United States adds that, under *Kane III*, we must affirm the district court's denial of SUWA's motion to intervene as to title but reverse as to scope.[18] *Id.* We agree with the United States.

## I.    Intervention as of Right Under Rule 24(a)(2)

To intervene as of right under Rule 24(a)(2), SUWA must establish (1) that the application is timely, (2) that it claims an interest relating to the property or transaction that is the subject of the action, (3) that the interest may as a practical matter be impaired or impeded, and (4) that the interest may not be adequately represented by the United States.

No party disputes that SUWA's motion is timely. And the district court acknowledged that under governing law, SUWA has an interest that may as a practical matter be impaired or impeded. *Kane (2)*, 606 F. Supp. 3d at 1152; *see San Juan Cnty.*, 503 F.3d at 1190–1203; *Kane III*, 928 F.3d at 891–92; *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) ("With respect to Rule 24(a)(2), we have declared it indisputable that a prospective intervenor's environmental concern is a legally protectable interest." (cleaned up)). So the only issue in dispute is whether the district

---

[18] The United States' brief asserts additional arguments challenging this court's reasoning in *Kane III* as it relates to SUWA's intervention under Rule 24(a)(2) "to be considered by the full court if it grants initial hearing en banc and to preserve them for further review." U.S. Br. at 23. As with Kane County's en banc arguments, we acknowledge but do not reach them. *See Arostegui-Maldonado*, 75 F.4th at 1142.

21

court erred in concluding that the United States adequately represents SUWA's interests.

As the proposed intervenor, SUWA must show that the representation by the existing parties may be inadequate; but this burden is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." (quoting 3B J. Moore, Federal Practice 24.09–1 (4) (1969)); *accord Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 195 (2022) ("This Court has described the Rule's test as presenting proposed intervenors with only a minimal challenge."); *see also Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978) ("[T]he possibility of divergence of interest need not be great in order to satisfy th[is] burden . . . .").

When a would-be intervenor's and the representative party's interests are "identical," we presume adequate representation. *Bottoms*, 797 F.2d at 872. But "this presumption applies only when interests overlap fully." *Berger*, 597 U.S. at 196–97 (cleaned up). As the Supreme Court recently stated, "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Id.* at 197 (quoting 7C Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022)). And when, as here, the

22

government is the representative party, we have expressed doubt about whether it can "adequately represent the interests of a private intervenor *and* the interests of the public." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017). We have also noted that "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Clinton*, 255 F.3d at 1256. "This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Id.*

### A.    The United States does not adequately represent SUWA's interests on the issue of scope.

As detailed above, we determined in *Kane III* that the United States does not adequately represent SUWA's interests on scope. But the district court brushed past *Kane III* in remarking that *Kane III* did not create "a *per se* right to intervene in R.S. 2477 cases" and that *Kane III* is "distinguishable" from this case. *Kane (2)*, 606 F. Supp. 3d at 1142. But *Kane III*'s intervention analysis applies in this substantially identical case. As spelled out below, we are unpersuaded by any of the district court's reasons for saying otherwise.

### 1.    The United States' Interest

The district court ruled that the "very nature of the legal analysis and evidence" in this R.S. 2477 litigation shows that "competing policy, economic, political, legal, and environmental factors" are extraneous to the scope

23

determination. *Kane (2)*, 606 F. Supp. 3d at 1152–53 (quoting *Kane III*, 928 F.3d at 893–94). Viewed this way, the court determined that the only interest that the United States represents is its "exclusive title to property." *Id.* at 1153. We disagree.

First, we conclude that the "nature of the legal analysis and evidence" in *Kane III* is indistinguishable from that in this case. *See id.* As the United States concedes, this case and *Kane III* have no material differences that would alter the nature of the legal analysis or evidence. Indeed, the only difference we detect is that the two cases involve separate alleged R.S. 2477 rights-of-way. But neither the parties' briefs nor the district court's order identifies why *this* difference matters.

Second, the district court misidentifies the United States' interests in the scope determination. In the court's view, the only interest that the United States represents is its "exclusive title to property." *Id.* But as outlined above, the scope issue arises only after the United States has lost on the underlying title dispute—meaning after the district court has quieted title in favor of Kane County. Thus, when the United States begins litigating scope, it has already lost its title argument and is next litigating the permitted use and width of the right-of-way.[19] The district court's scope determination will dictate how Kane

---

[19] We agree with Kane County that scope encompasses both use and width. *See* Oral Argument at 32:10. Due to the limited nature of the property right, "alter[ing] the use" of the right-of-way "affects the [United States']

(*footnote continued*)

County can use its right-of-way, for instance as a two-lane vehicular road, a two-track jeep trail, a bridle path, or a footpath. *See SUWA v. BLM*, 425 F.3d at 747–48. So contrary to the district court's view, the scope determination is not about *the United States' exclusive title to property*; it is about how Kane County can use its right-of-way across federal public land. Moreover, in *Kane III*, we rejected the view that in litigating the *scope* of an R.S. 2477 right-of-way, the United States' only interest is its exclusive title to property. 928 F.3d at 894.

We acknowledge that "the federal government is not always legally obligated to consider a broader spectrum of views." *Kane (2)*, 606 F. Supp. 3d at 1153. But as the district court itself recognized, such an obligation "arises when it is 'litigating on behalf of the general public.'" *Id.* (quoting *Clinton*, 255 F.3d at 1256); *see also Clinton*, 255 F.3d at 1256 ("In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views . . . ."); *WildEarth Guardians*, 573 F.3d at 996–97 (observing that the federal government "has multiple objectives" in litigating on "behalf of the general public" (citation omitted)). And as we determined in *Kane III*, because

---

servient estate," even if "conducted within the physical boundaries" of the right-of-way. *SUWA v. BLM.*, 425 F.3d at 747. "Utah adheres to the general rule that the owners of the dominant and servient estates 'must exercise [their] rights so as not unreasonably to interfere with the other.'" *Hodel*, 848 F.2d at 1083 (quoting *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (Utah 1946); and then citing *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943) (denoting that an easement is limited to the original use for which it was acquired)).

the property at issue in R.S. 2477 litigation "is public land, public interests are involved." *Kane III*, 928 F.3d at 894 (citing *Block*, 461 U.S. at 284–85) (observing that the Quiet Title Act was "necessary for the protection of the national public interest"); *see also San Juan Cnty.*, 503 F.3d at 1167 (qualifying R.S. 2477 rights-of-ways as those over "public lands").

As in *Kane III*, the scope issue in this case concerns the use of R.S. 2477 rights-of-way across the Grand Staircase-Escalante National Monument—i.e., federal public lands. *See* 54 U.S.C. § 320301(a) (authorizing the President to establish national monuments "on land owned or controlled by the Federal Government"); Proclamation No. 6920, 61 Fed. Reg. 50,223, 50,225 (Sept. 18, 1996) (establishing the Grand Staircase-Escalante National Monument in the State of Utah, reserving "approximately 1.7 million acres" of "Federal land"). And so, consistent with *Kane III*, we conclude that the *scope* determination, unlike the title determination, implicates the United States' "broad-ranging and competing interests." *Kane III*, 928 F.3d at 896.

### 2.    Relief versus interest

In ruling that "SUWA's interests [on scope] are adequately protected" by the United States, the district court emphasized that the United States (1) has "asserted it intends to argue for the narrowest width possible if any right-of-way is established in [Kane County's] favor" and (2) has "not acted contrary to its representations" during or after trial. *Kane (2)*, 606 F. Supp. 3d at 1154. In the district court's view, "SUWA can ask for no more." *Id.* In a similar vein,

26

Kane County asserts that the United States adequately represents SUWA's interests in this lawsuit because both parties seek the same "relief." K.C. Br. at 53. But as we reasoned in *Kane III*, "even if the United States is advocating *as well as can be expected* for the narrowest scope of the roads, its conflicting interests render its representation inadequate." 928 F.3d at 895 (citations omitted and emphasis added). Moreover, even if the United States and SUWA are pursuing the same form of *relief* for purposes of piggyback standing,[20] that does not render their *interests* identical under Rule 24(a)(2). *Id.* at 887 n.13 (collecting cases). "To hold otherwise would leave movants who pursued the same form of relief as the representative party *per se* adequately represented under Rule 24(a)(2) and thus denied intervention . . . ." *Id.* We decline to equate relief and interests.

At bottom, the pertinent inquiry is not whether SUWA and the United States are pursuing the same relief—we accept that they are—but instead is whether they have *identical* interests in pursuing that relief. We turn to that question next.

### 3.    SUWA's and the United States' Interests

---

[20] In *Town of Chester v. Laroe Estates, Inc.*, the Supreme Court modified the "piggyback standing" rule, holding that an intervenor as of right "must meet the requirements of Article III if the intervenor wishes to *pursue relief not requested*" by an existing party. 581 U.S. 433, 435 (2017) (emphasis added).

27

In *Kane III* we determined that SUWA and the United States have "conflicting interests" in the scope determination. 928 F.3d at 895. This was not novel. As far back as *San Juan County*, a majority of this court recognized that if title is settled in favor of Kane County, then the United States "may wish to compromise with the County concerning use of the road." 503 F.3d at 1207; *see also Kane I*, 597 F.3d at 1135 (anticipating that "SUWA and the United States might disagree as to the potential scope of Kane County's purported rights-of-way," but that SUWA had waived such an argument "for purposes of this appeal").

Here, the parties do not contend that their interests have shifted since *Kane III* or between *Kane (1)* and *Kane (2)*. Despite *Kane III*'s pronouncement that "SUWA's and the United States' interests are not identical" on the issue of scope, 928 F.3d at 895, the district court considered their interests as "harmonious" enough that the United States adequately represented SUWA's interests on scope, *Kane (2)*, 606 F. Supp. 3d at 1153.

The district court reasoned that "SUWA's objectives and interests in this litigation are the same as the United States" because "if title is found in favor of [Kane County] for any" right-of-way, SUWA and the United States "seek for that right-of-way to be as narrow as possible." *Id.* To the district court, this meant that "any interests SUWA may have are still *adequately* represented by the United States." *Id.* at 1153–54. But as discussed above, this reasoning improperly equates the distinct concepts of relief and interests.

28

Another problem with the district court's adequacy-of-representation determination is that Rule 24(a)(2) requires that the interests of SUWA and the United States be *identical*, not just "harmonious." *Id.* at 1153. Indeed, the Supreme Court has declared that "[w]here 'the absentee's interest is similar to, but not *identical* with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger*, 597 U.S. at 197; *see id.* at 198 (concluding that under Rule 24(a)(2), the intervening party's interests were not "identical" to the current party, though both were defending the constitutionality of the disputed state law, because the intervenor "s[ought] to give voice to a different perspective" and had a different "primary objective" than the current party); *accord Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 777 (6th Cir. 2022) ("[O]verlapping interests do not equal convergent ones for the purposes of assessing representation under Rule 24(a)."); *see also, e.g.*, *La Union del Pueblo v. Abbott*, 29 F.4th 299, 308-09 (5th Cir. 2022) (finding inadequate representation under Rule 24(a)(2)) (expounding that despite the intervenor-affiliate group and current government-party sharing the "same objective" of defending the constitutionality of a statute, the affiliate-group's interests were "less broad than those of the governmental defendants" and "different in kind from the public interests of the State or its officials"); *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) (concluding same) (observing that though Louisiana and the parent-intervenors both sought to defend the state's school voucher program, Louisiana had

29

"extensive interests to balance" in defending its school voucher program, while the parent-intervenors' "only concern [wa]s keeping their vouchers"); *Planned Parenthood of Minnesota, Inc. v. Citizens for Cnty. Action*, 558 F.2d 861, 870 (8th Cir. 1977) (concluding same) (articulating that despite the intervenor and representative parties being "interested in upholding the constitutionality of the ordinance" that their "respective interests, while not adverse, [were] disparate").

Because, as in *Kane III*, SUWA's interests are not "identical" to the United States' interests, we conclude that "no presumption of adequate representation applies." 928 F.3d at 895. And so, "given our court's relaxed intervention requirements in cases raising significant public interests such as this one, and our liberal approach to intervention, we hold that SUWA has [again] satisfied its minimal burden of showing that the United States may not adequately represent its interests" on scope in the *Kane (2)* litigation. *Id.* at 896–97 (cleaned up); *see id.* at 894 ("For a proposed intervenor to establish inadequate representation by a representative party, 'the possibility of divergence of interest need not be great,' and this showing 'is easily made' when the representative party is the government." (first quoting *Nat. Res. Def. Council*, 578 F.2d at 1346; and then quoting *Clinton*, 255 F.3d at 1254)).[21]

---

[21] In *Kane III* we ruled that "even if" the presumption applied, SUWA would have rebutted it. 928 F.3d at 895. Because we have concluded that no presumption applies in this case, we need not consider whether SUWA could overcome such a presumption.

30

### 4.    Rule 1 of the Federal Rules of Civil Procedure

Finally, the district court theorized that even if SUWA had satisfied the requirements of intervention under Rule 24(a)(2), Rule 1 of the Federal Rules of Civil Procedure might still provide grounds for denying intervention. *Kane (2)*, 606 F. Supp. 3d at 1155–56. Rule 1 states that the civil rules are to "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." We sympathize with district court judges hearing cases involving multiple parties and multiple lawyers. But we liken this case to *Berger*, where the Court stated that, "[w]hatever additional burdens adding [the intervenor] to this case may pose, those burdens fall well within the bounds of everyday case management" in cases involving multiple parties. 597 U.S. at 199–200 (rejecting the argument that allowing intervention could "make trial management impossible" (citation omitted)). We further note that we have found no caselaw using Rule 1 to deny intervention to a party that has satisfied Rule 24(a)(2)'s requirements. Having already concluded that SUWA has satisfied such requirements, we reject the contention that Rule 1 precludes intervention in this case.

\* \* \*

Because this case is materially indistinguishable from *Kane III*, along with the reasons discussed above, we hold that the district court's order contravenes *Kane III* and thus its denial of SUWA's motion to intervene on the

31

issue of scope was error. This conclusion stands despite our agreeing with Kane County and the district court that *Kane III* did not grant SUWA a "*per se* right to intervene in all R.S. 2477 cases." K.C. Br. at 43–44 (quoting *Kane (2)*, 606 F. Supp. 3d at 1142 n.6). Nor do we suggest that *Kane III* "mandate[s] that courts in this circuit allow SUWA—and every other environmental, recreational or other special interest group . . . to intervene in every road case in which it seeks to intervene." K.C. Br. at 43. The intervention inquiry is, indeed, "a highly fact-specific determination." *San Juan Cnty.*, 503 F.3d at 1197 (citation omitted). So in cases in which the material facts, the parties, and the legal issues differ from those in *Kane III*, the result might differ, too. But where, as here, there is no "material difference in fact," U.S. Br. at 45, between this case and *Kane III*, *Kane III* controls.

We now turn to the matter of whether SUWA's interests are adequately represented on the issue of *title*.

### B.     The United States adequately represents SUWA's interests on the issue of title.

In *Kane I* this court ruled that the United States adequately represents SUWA's interest on the issue of title. 597 F.3d at 1135; *accord Kane III*, 928 F.3d at 894 ("SUWA and the United States ha[ve] identical interests in the title determination . . . ."). Acknowledging our holding in *Kane I*, SUWA asserts that we still should allow it to intervene in *Kane (2)* on the issue of title. But *Kane I* binds this panel, *Arostegui-Maldonado*, 75 F.4th at 1142; and we

agree with the reasoning of that opinion. We accordingly reject SUWA's arguments asking us to overrule binding precedent, and we affirm the district court's order denying SUWA intervention on the issue of title.

## CONCLUSION

Consistent with our holdings in *Kane I* and *Kane III*, we reverse the district court's denial of SUWA's motion to intervene on the issue of scope, affirm on the issue of title, and remand for further proceedings in accordance with this opinion.

No. 22-4087, Kane County, Utah et al. v. United States of America, et al.

**KELLY**, Circuit Judge, concurring.

Based upon Kane County v. United States (Kane III), 928 F.3d 877 (10th Cir. 2019), I am compelled to agree that the district court's denial of SUWA's motion to intervene on the issue of scope is reversible.

That said, I agree with the government that Kane III's distinction between title and scope in quiet title actions does not comport with our precedent and is not analytically sound. Aplee. Br. (U.S.) at 57–60. When it comes to title, SUWA has no interest that qualifies it to act as a party in this litigation which differs from the interest that any hiker or off-road vehicle enthusiast would have. SUWA could not bring a quiet title action against the United States nor could SUWA be a defendant in a quiet title suit over the roads at issue in this litigation, as it has no property interest of its own at stake. A quiet title action simply does not involve questions of federal land management, see N. Dakota ex rel. Stenehjem v. United States, 787 F.3d 918, 921 (8th Cir. 2015), and the government has the exclusive right to defend its title — and by extension, the scope — of any right-of-way, see San Juan Cnty. v. United States, 503 F.3d 1163, 1215–16 (10th Cir. 2007) (en banc) (McConnell, J., concurring); Aplee. Br. (U.S.) at 45–48.

The United States and SUWA share identical objectives as to title: defending the government's title and minimizing any rights-of-way across federal land. See Kane Cnty. v. United States, 950 F.3d 1323, 1334–36 (10th Cir. 2020) (Tymkovich, C.J., dissenting from denial of reh'g en banc). As the district court observed (and through whatever steps

crafted by this court to divide the inquiry), "ownership and scope are the two sides of the same coin that comprises title." VIII Aplt. App. 2304–05.

Moreover, despite Federal Rule of Civil Procedure 24(a)(2)'s mandate to consider "practical matter[s]" regarding intervention as of right, Kane III results in an impractical (or remarkably inefficient) case management situation. The parties agree that title and scope are not neatly divisible. As SUWA notes: "The same evidence and arguments underlie both the title and scope determinations, and there is no practical way to split up discovery, trial, and litigation into 'title' and 'scope.'" Aplt. Reply Br. at 20. And as the government explains: "The district court cannot find the existence of a right-of-way without defining its scope." Aplee. Br. (U.S.) at 58; accord Aplee. Br. (Utah & Kane County) at 44. The court should revisit the unworkable construct it has created. See San Juan Cnty., 503 F.3d at 1209–10 (Kelly, J., concurring).